## Carr v. Walster Corp.

*Ellis Berger, John P. Mahon* and *Robert B. Simons,* for plaintiff.

*Joseph Marzzacco* and *Pearson Judd,* for defendant.

HOBAN, P. J., June 6, 1957.—The action is replevin with bond. Plaintiffs claimed the right as bailors to recover a milk tank trailer placed with defendant for repairs allegedly on a credit basis. Defendant claims an artisan's lien. The case was tried before Hoban, P. J., and a jury. Plaintiffs and defendant both submitted requests for binding instructions. The trial judge withdrew a juror and directed the entry of judgment for defendant in the sum of $5,897.45, being the amount of the repair bill less an agreed upon credit for an incomplete paint job. Plaintiffs moved for a new trial and for judgment n. o. v. At argument, plaintiffs withdrew their motion for a new trial, but press the motion for judgment n. o. v.

Plaintiffs are in the business of hauling liquids, principally milk, in fluid bulk in tank trailers. Defendant corporation is engaged in the business of repairing, altering and servicing tank trailers. About July 1, 1955, defendant through its president, Arthur Walster, solicited business from plaintiff, Raymond Carr, for the alteration and other servicing requirements of the Carr trucks. Asked about credit terms, Walster explained that: "Our (Carr's) credit rating was okay, not to worry about a thing. Everything was taken care of as far as our (Carr's) credit rating". This was explained by Walster as a witness for plaintiff, but at the time no longer connected with defendant corporation, to mean "credit terms were standard . . . one half of one per cent ten days, net thirty".

Thereafter, from time to time plaintiffs sent several trailers to defendant to be "stretched" or elongated in tank length, which work was accomplished and the vehicles turned over to plaintiffs, apparently on completion of the work and before payment.

Early in October 1955, one of plaintiffs' tank trailers was damaged in an accident; plaintiffs asked defendant for an estimate of repair cost, which after inspection by Walster was prepared by defendant and on October 20, 1955, submitted to plaintiffs. This estimate was prepared for plaintiffs at the instructions of plaintiffs' insurance carrier, was approved, and on October 27, 1955, the vehicle was delivered to defendant corporation to do the work. The repair cost as quoted was $6,022.45 and the quotation on the bottom of the paper carried this notation: "Terms: ½% 10 days—net 30—Prices F. O. B. main plaint unless specified otherwise. Walster Corporation by (sig) E. H. Williams, Manager".

As of December 12, 1955, plaintiffs owed defendant approximately $3,800 for work done prior to September 1, 1955, the date Williams became defendant's manager.

On December 20, 1955, defendant's manager notified plaintiffs that the damaged truck was repaired and ready for delivery, but informed plaintiffs that because of plaintiff's existing past due accounts, defendant would insist on payment in full before release of the tanker to plaintiffs would be permitted. The amounts demanded was $9,811.66, which included the charges for repair of the unit in defendant's possession.

Thereupon plaintiffs offered to pay defendant the sum of $6,022.45 for the release of the unit, but defendant refused to accept anything less than the account in full.

On January 9, 1956, plaintiffs filed a praecipe for replevin with their bond, the writ issued and plaintiffs

took possession. After a rule to file, the complaint was filed on February 23, 1956. Defendant's answer and new matter, asserting an artisan's lien for $6,-022.45 only, was filed April 26, 1956, and plaintiffs' reply was filed April 20, 1956.

The case came on for trial November 19, 1956, and it appears that shortly before the date of trial Walster Corporation sued plaintiffs in their home county, Chester County, for the balance of approximately $3,800, excluding the repair bill for the tanker replevined. At trial plaintiffs flatly refused to pay the repair bill for the tanker, taking the position that defendant had no enforceable lien.

At the trial also plaintiffs made some effort to show that after the tanker had been replevied defective workmanship was discovered, but since plaintiffs failed to plead any special damages in their complaint, the issue was not considered in the decision of the trial judge, it being conceded that the quoted figure was the price agreed on, and defendant's manager testified that the prices for the work were fair and reasonable and that the work was properly done.

In stating the facts we have applied the principle that the one who seeks judgment n. o. v. must concede the truth of all facts and inferences of fact legitimately to be derived from the testimony contra to his position and all doubts resolved in favor of the adversary.

In the absence of agreement to the contrary, an artisan who performs work on a chattel in his possession as bailee, either for a stipulated price or on an implied contract to pay a reasonable price, has a specific possessory lien upon the subject matter until his bill is paid. The artisan may waive such right, either expressly or by necessary implication. Such a waiver may arise when the bailee agrees to extend credit to the bailor: Sum. Pa. Jur. Personal Property Law,

§§254, 255; Restatement, Security, §61(*a*) and §65, Comment a.

A surrender of possession by the lienor to the bailor before payment for services to the chattel terminates the lien: Restatement, Security, §80(1) ; Sum. Pa. Jur. Personal Property Law, §312.

The lienor has no right to enforce a lien on chattels in his possession for services performed on other chattels surrendered, unless he has established a general lien by contract for such past service, or unless the lienor has a specific lien on several items delivered to him under a single contract for services, where the lien continues upon the chattels retained as security for the entire demand.

Applying the foregoing principles to the facts, it is clear that defendant had no lien on the tank trailer involved to secure past due obligations of plaintiffs, but the lien if any was specific for the work done on that chattel. There is no evidence of retention of any general lien by contract and no evidence of delivery of this chattel with others as part of a group under a single repair order or contract. Defendant has tacitly conceded this conclusion by failing to assert a general lien in its answer.

Assuming, but not deciding, that a specific lien existed, we are met with another principle. A refusal of the lienor to accept a tender of the amount of the proper charges owing to him works an extinguishment of the lien (Sum. Pa. Jur. Personal Property Law, §316; Restatement, Security, §78(*1*)), and tender may be waived by words or conduct of the lienor. The Comment on §78(1) has this to say:

"a. Waiver of tender. A tender is excused if the lienor by words or conduct indicates that a tender will be refused. The mere claim of a larger amount than the one due is not of itself enough to constitute a waiver

of tender. The words or conduct of the lienor must indicate that a proper tender will be refused. The lienor is entitled to the sobering effect of a tender unless it is evident that a tender will be a useless formality."

It is clear from the evidence that within 30 days after December 20, 1955, plaintiffs on one or more occasions offered to pay defendant the stipulated charges for the repairs to the tanks, that defendant's manager, on orders of his superior, flatly refused to entertain any offer or to release the trailer except on payment of plaintiffs' account in full. Under such circumstances a formal tender would be a useless formality.

We conclude that under the undisputed circumstances the lien, if any, was terminated; plaintiffs were entitled to possession and, on refusal, to secure possession by replevin.

Accordingly it becomes unnecessary to decide whether defendant waived its artisan's lien because of a credit arrangement, or if it was entitled to revoke its credit arrangement and reinstate the lien by reason of the impairment of plaintiffs' credit.

What we do decide is that defendant had no enforceable lien on this chattel for past due obligations, and that any enforceable lien remaining was terminated by tender of the stipulated charges for the work performed, or by waiver of formal tender under circumstances indicating that a proper tender would be refused. Hence, prior to January 9, 1956, plaintiffs were entitled to possession of the chattel replevied free of any artisan's lien, and defendant must pursue its remedy in some other appropriate action.

Now, June 6, 1957, the rule for judgment non obstante veredicto is made absolute. Judgment of possession is now entered in favor of plaintiffs for the goods described in the writ.